**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                                                    :
MICHELLE WILLIAMS,                  :
                                                    :
                    Plaintiff,              :
                                                    :          Civil Action No. 07-5559 (JAG)
                    v.                       :
                                                    :                 **OPINION**
WASHINGTON  MUTUAL BANK,   :
                                                    :
                    Defendant.          :
_____:

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion by Defendant, Washington Mutual

Bank ("WMB" or "Defendant"), to dismiss the complaint and to compel arbitration, against

Plaintiff, Michelle Williams ("Plaintiff").[1]  For the reasons stated below, WMB's motions to

_____

[1]In its Proposed Order attached to the Notice of Motion, and in its moving and reply
briefs, Defendant also moved for sanctions and costs against Plaintiff, in connection with
defending the present motion.  Defendant did not include its petition for sanctions in the actual
Notice of Motion.

Under Federal Rule of Civil Procedure 11(c), the Court may impose appropriate sanctions
on attorneys who violate Rule 11(b), which states:

By presenting to the court a pleading, written motion, or other paper--whether by
signing, filing, submitting, or later advocating it--an attorney or unrepresented
party certifies that to the best of the person's knowledge, information, and belief,
formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to
harass, cause unnecessary delay, or needlessly increase the cost of
litigation;

1

dismiss and to compel arbitration are granted.

## I.   BACKGROUND

In May 2003, Plaintiff was hired by Defendant for the Assistant Manager position at the WMB banking branch, located in Belleville, New Jersey (the "Branch"). (Compl. ¶ 3.)   On May 27, 2003, in consideration of her employment, Plaintiff signed an employee arbitration agreement (the "Agreement") with WMB. (Certification of John Tratnyek ("Tratnyek Cert."), Ex. B.)

In 2004, Plaintiff assisted the Branch manager in interviewing applicants for employment at the Branch, including an individual ("the employee"), who eventually accepted a position. (Compl. ¶¶ 5-6, 13). On May 17, 2007, following a conversation with a co-worker who questioned the employee's immigration status, Plaintiff placed an anonymous call to the WMB employee hotline to report that the employee was an undocumented worker. (Compl. ¶¶ 24-26).

---

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b).

District courts retain broad discretion in determining the appropriate sanctions under Rule 11.  Langer v. Monarch Life Ins. Co., 966 F.2d 786, 810 (3d Cir. 1992).  This Court finds that Plaintiff's conduct in bringing the instant action did not violate Rule 11(b), and does not warrant the imposition of sanctions.  Defendant's motion for sanctions is denied.

Later that day, Plaintiff was questioned by a representative of the Defendant's security office during which she revealed that she was the caller but had no further knowledge or proof of the employee's immigration status.  (Compl. ¶ 28).

As a result of Plaintiff's call, the following day, May 18, 2007, two WMB representatives visited the Branch to investigate Plaintiff's allegations.  (Compl. ¶ 29).   The representatives perused the relevant hiring records, and found that the records falsely indicated that the employee had produced documents proving her legal immigration status. (Compl. ¶ 33.)  Thereafter, a WMB representative informed Plaintiff that she was terminated, effective immediately, for "withholding information." (Compl.¶ 34).  Plaintiff protested her termination, stating that she was the one who alerted WMB to the presence of an undocumented worker in the Branch. (Compl. ¶ 35.)

On October 12, 2007, Plaintiff filed a Complaint in Superior Court of New Jersey, Law Division, Essex County alleging retaliation in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. §34:19-1.  Defendant filed a Notice of Removal with this Court on November 19, 2007.  Jurisdiction is proper with this Court, pursuant to its diversity jurisdiction under  28 U.S.C. § 1332(a).  Plaintiff's and Defendant's citizenship is diverse, and the amount in controversy exceeds $75,000.00

## II.   DISCUSSION

On May 5, 2008, WMB moved to dismiss the complaint and to compel arbitration.  In support of its motion, Defendant contends that the arbitration agreement between Defendant and Plaintiff  constitutes a valid, binding agreement, and that state and federal law requires the arbitration agreement to be enforced.

As a preliminary matter, this Court notes that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., memorializes the strong congressional policy favoring arbitration.[2] "[D]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Great W. Mortg. Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997) (internal quotations omitted).

Notwithstanding the well-established policy in favor of arbitration, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986) (citations omitted); see also Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 868 F.2d 573, 576 (3d Cir. 1989) (per curiam). "The question whether the parties have submitted a particular dispute to arbitration ... is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (internal quotations and citations omitted); see also Laborers' Int'l Union of N. Am., 868 F.2d at 576.

This Court does not consider the merits of the claim, but "decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid." Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1996) (citing 9 U.S.C. § 2). If there is an agreement to arbitrate, the disposition of the merits falls within the purview of the arbitrator. Id.

The Third Circuit has set forth a two-prong inquiry for courts to use when determining whether to compel arbitration: "(1) Did the parties seeking or resisting arbitration enter into a

---

[2]The FAA was implemented "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gay v. CreditInform, 511 F.3d 369, 378 (3d Cir. 2007) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)).

valid arbitration agreement?"; and "(2) Does the dispute between those parties fall within the language of the arbitration agreement?" John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998) (citations omitted).  Regarding the first prong, "[f]ederal law determines whether an issue governed by the FAA is referable to arbitration." Harris v. Green Tree Fin. Corp., 183 F.3d 173, 178 (3d Cir. 1999).  Federal substantive law governs the interpretation and construction of arbitration agreements.  See id. at 179.  While federal law is used to interpret such agreements, state law may also be applied, pursuant to § 2 of the FAA.  Harris, 183 F.3d at 179.  Arbitration agreements are "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U .S.C. § 2.  Nonetheless, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente, 272 F. App'x 174, 178 (3d Cir. 2008) (internal citations omitted).  "The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability." Harris, 183 F.3d at 181.

In light of the foregoing, the first inquiry that this Court must make is whether the parties have made a valid and enforceable agreement to arbitrate their disputes.  To determine whether the arbitration agreement is valid and enforceable, this Court must apply New Jersey state law contract principles.[3]  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Under New Jersey law, a contract is enforceable when accompanied by "some consideration." Martindale v. Sandvik, Inc., 800 A.2d 872, 878 (N.J. 2002).  New Jersey courts

---

[3]The parties do not dispute the application of New Jersey law to issues of contract dispute.

5

have held that entry into an employment contract constitutes sufficient consideration to render the agreement enforceable. See id. at 879 ("Although defendant was under no obligation to actually hire plaintiff, defendant's consideration of plaintiff's application, its extension of an offer and the commencement of employment, and thereafter the provision of compensation and on-going employment constituted sufficient consideration to support the parties' agreement to arbitrate their disputes.").

Defendant contends, and has submitted evidence showing, that Plaintiff signed an arbitration agreement in consideration of her employment with WMB.[4] (See Tratnyek Cert., Ex. B.) The relevant evidence is a document entitled, "Binding Arbitration Agreement." (Id.) The front of the two-sided document depicts Plaintiff's printed name filled into the sentence, "I, Michelle Williams (printed), in consideration of my employment with Washington Mutual, Inc., . . . agree . . . as follows." (Id.) The first numbered paragraph on the front of the two-sided document further states, "[a]ny and all disputes that involve or relate in any way to my employment (or termination of employment) with Washington Mutual shall be submitted to and resolved by final and binding arbitration." (Id.) The top left corner of the reverse side of the two-sided document indicates, in bold typeface, that the agreement is continued from the previous page. (See id. ("**Binding Arbitration, continued**").) At the bottom of that side of the document is the signature, "Michelle Williams"; the date, "5/27/03"; Plaintiff's employee identification number (printed); and the last four digits of Plaintiff's social security number (printed). (Id.) The plain language of the document makes clear that Plaintiff signed the

---

[4] The Supreme Court has held that arbitration provisions in employment contracts are covered by the FAA, with the exception of employment contracts entered into by transportation workers. Circuit City Stores v. Adams, 532 U.S. 105, 119 (2001).

document, the arbitration agreement, in consideration her employment at the Branch.[5]

Plaintiff does not dispute that it is her signature that appears on the arbitration agreement. Instead, she contends the arbitration agreement is unenforceable because she was not aware of its contents.[6]  (Pl. Opp. Br., p. 3).  "In the absence of a consensual understanding, neither party is entitled to force the other to arbitrate their dispute."  Grover v. Universal Underwriters Ins. Co., 403 A.2d 448, 452 (N.J. 1979)  Nonetheless, a mere claim of lack of awareness of the contents of a signed agreement is not sufficient to invalidate it.  See Morales v. Sun Constructors, Inc., 541 F.3d 218, 222 (3d Cir. 2008) ("[E]very contracting party has the duty to learn and know the contents of the contract before he signs and delivers it.")  Failing to read or understand the entire contents of an arbitration agreement will not release an employee from the agreement.  Id. (collecting cases).

While mutual assent–the proverbial meeting of the minds–is required to form a valid

---

[5]The creation of an employment relationship has been deemed to constitute sufficient consideration in numerous jurisdictions, including New Jersey.  Martindale, 800 A.2d at 879. ("[E]mployment has been found to constitute sufficient consideration to support certain employment-related agreements")

[6]Plaintiff alleges that she never saw the first page of the two-sided document.  Plaintiff further contends that a Washington Mutual  human resources representative informed her that the front-side of the document contained "Washington Mutual mumbo-jumbo," thereby leading Plaintiff to sign the document, unaware of its contents.  Plaintiff also alleges that the printed name that appears on the front side of the document was not written by her, but rather penciled in later, by someone else.   (Plaintiff's Brief in Opposition to Defendant's Motion to Compel Arbitration ("Pl. Opp. Br."), p. 3).

On the back of the two-sided document there are provisions above Plaintiff's signature that unquestionably put Plaintiff on notice as to what she was signing.  For example, in addition to the words "Binding Arbitration" which appear in bolded typeface at the top of the document, the document explains various aspects of the arbitration process, including how the arbitrator is to be selected.  The detailed contents of the second page of the two-sided document belie Plaintiff's assertion that she lacked knowledge of what she was signing.

contract, it is the manifestation of the parties' intent that is determinative.    Morales, 541 F.3d at 221.  Offering no proof of fraud, duress, or unconscionability, Plaintiff has failed to show that the arbitration agreement should not be enforced.  See Fleming Cos. v. Thriftway Medford Lakes, 913 F. Supp. 837, 842 (D.N.J. 1995) ("Parties are generally free to contract as they desire and, absent mistake, fraud, duress, unconscionability, or illegality, parties are bound by the unambiguous terms of their contract.").

This Court finds that Plaintiff and WMB had a valid and enforceable contract requiring binding arbitration as the means of resolving disputes involving or related to Plaintiff's employment.

Next, this Court must address whether the parties' agreement to arbitrate covers arbitration of an employee's statutory claims.  The arbitration agreement clearly states that the parties are to arbitrate *any* and *all* disputes relating to Plaintiff's employment (or termination, thereof).  (Front page of the Agreement, ¶ 1.)  The underlying dispute relates directly to the termination of Plaintiff's employment, and falls squarely within the purview of the arbitration agreement.

Having found that the parties' arbitration agreement is enforceable and covers the present dispute, this Court shall compel arbitration between Plaintiff and WMB, pursuant to the arbitration agreement.

### III.   CONCLUSION

For the reasons stated above, Defendant's motions to dismiss[7] and to compel arbitration are granted.  Defendant's motion for sanctions is denied.


Date: December 29, 2008

                                     S/Joseph A. Greenaway, Jr.
                                     JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

[7]"If a party to a binding arbitration agreement is sued in federal court on a claim that the plaintiff has agreed to arbitrate, it is entitled under the Federal Arbitration Act (FAA) to a stay of the court proceeding pending arbitration . . . and to an order compelling arbitration . . . If all claims involved in the action are arbitrable, a court may dismiss the action instead of staying it." Seus v. John Nuveen & Co., Inc., 146 F.3d 175, 179 (3d Cir. 1998).  In the instant action, Plaintiff's single claim is arbitrable, and is thus, properly dismissed.